**ORDERED.**

**Dated: May 18, 2011**

_____
**EILEEN W. HOLLOWELL**
**U.S. Bankruptcy Judge**
_____

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: ) | |
| ) | Involuntary Chapter 11 |
| ) | |
| ) | Case No. 4:11-bk-06731-EWH |
| U.S. CORP., ) | |
| ) | **MEMORANDUM DECISION RE:** |
| ) | **DISMISSAL OF INVOLUNTARY** |
| ) | **PETITION AND RELATED** |
| Involuntary Debtor. ) | **PLEADINGS** |
| ) | |

## I. FACTS AND PROCEDURAL HISTORY

On March 16, 2011, Marshall E. Home ("Home"), on his own behalf as well as on behalf of some sixty-six other petitioning creditors (collectively, the "Petitioning Creditors"), filed an involuntary Chapter 11 petition (the "Involuntary Petition") against an entity called U.S. Corp. (the "Alleged Debtor") and what Home calls its "agents and/or instrumentalities."[1] More precisely, the Involuntary Petition's caption is styled as "U.S. Corp and its federal STATE OF ARIZONA, employees, agents, instrumentalities, [as] attached list as Attachment 1" (the "Attachment"). The Involuntary Petition lists the

---

[1] The Court takes judicial notice of the statements made by Petitioning Creditors in papers filed on this Court's docket. Fed. R. Evid. 201(c); see also In re Parkway Sales and Leasing, Inc., 411 B.R. 337, 343 (Bankr. E.D. Tex. 2009); In re Scarpinito, 196 B.R. 257, 267 (Bankr. E.D.N.Y. 1996).

Alleged Debtor's street address care of a State of Arizona employee as "Southern Representative" at 410 W. Congress St., Tucson, Arizona, the address of a government building in downtown Tucson, Arizona. The Involuntary Petition lists the Alleged Debtor's principal place of business as "Washington D.C. And 50 Federal States, Pima County, Maricopa County, Pinal County." The Alleged Debtor's mailing address is listed as "Office of the US Attorney, District of Arizona, 405 W. Congress, Suite 4800, Tucson, Arizona 85701 and the Office of the U.S. Attorney, Attention: Eric Holder, Chief, U.S. Department of Justice, 950 Pennsylvania N.W., Washington, D.C. 20530."

The Attachment originally listed seventeen "instrumentalities," but Home has repeatedly amended it. The original list included a number of Arizona law firms; the Mortgage Electronic Registration Systems, Inc.; insurance companies; residential mortgage lenders; and a number of banks. In later filings, Home has added "agents" and "instrumentalities," including the Maricopa County Sheriff.

A summons was issued by the Clerk of the Court on the same day Home filed the Involuntary Petition (DE 3). There is no evidence that the summons was served on any party named in the Involuntary Petition or the Attachment, as amended.

The Involuntary Petition contained the signatures of two other individuals in addition to Home's. All three purported to hold "Exemption" claims against the Alleged Debtor. Home claims that the Alleged Debtor is indebted to him for over $3 billion. The other signatories, Jerald J. Gustafson and James P. Moreno, stated they held claims of $1 million each. Since the petition date, there have been thirty-three amendments to add additional petitioning creditors to the Involuntary Petition. The Involuntary Petition

2

included certifications, under penalty of perjury, by each of the signatories that the statements in the Involuntary Petition were true.

On April 8, 2011, Home began filing "<u>Motion[s] for Order[s] Authorizing Redemption of Personal Property</u>" (the "Redemption Motions"). The Redemption Motions sought the turnover of personal property, such as "CUSIP bonds" in the amount of $1 million each,[2] asked the Court to recognize a Petitioning Creditor's exemption rights in real property, asserted trademark infringement claims, and/or asked to remain in possession of real property in the face of a pending foreclosure sale or other collection action. Home filed sixty-nine Redemption Motions. The Court routinely denied them on the grounds that they sought relief not available to creditors under the Bankruptcy Code. At one point, Home attempted to file copies of the orders denying the Redemption Motions with a stamp across their face asserting the orders were being "accepted for value." Because no proper bankruptcy purpose was served by filing such stamped orders, an order was issued on April 22, 2011 (DE 164) directing the Clerk of the Court to refuse to accept such filings.

Home, on his own behalf and on behalf of the other Petitioning Creditors, has filed eighteen "Notice[s] of Removal" (the "Removals") removing state court litigation to this Court. In conjunction with some of the Removals, Home filed motions to waive the adversary filing fees, which were denied. The Removals include long, rambling text, but in most cases the removed action involved pending foreclosure, forcible entry and detainer, or other collection actions against the Petitioning Creditors.

---

[2] CUSIP generally refers to the Committee on Uniform Securities Identification Procedures, which supples a nine character identification number for securities traded in the United States.

3

On April 19, 2011, the Court issued an "Order to Show Cause as to Why Involuntary Case Should Not Be Dismissed" (the "Dismissal Show Cause Order") on notice to Home and all the Petitioning Creditors who had been added as of that date. The Dismissal Show Cause Order put the Petitioning Creditors on notice that the Involuntary Petition was subject to dismissal as having been improperly filed against a governmental unit. On April 26, 2011, the court issued a "Show Cause as to Why the Court Should Not Enter a Pre-Filing Order Limiting the Right of Petitioning Creditors to File Pleadings in the Bankruptcy Court for the District of Arizona" (the "Bar Show Cause Order"). The Bar Show Cause Order put the Petitioning Creditors on notice that they might be found to be vexatious litigants and, therefore, subject to a bar order. Hearings on both show cause orders was set for May 18, 2011 (the "Show Cause Hearing").

On May 16, 2011, Home filed a "Notice" to continue the Show Cause Hearing because of an emergency in a bankruptcy case in Illinois and because Home's filing of an adversary proceeding[3] naming this Judge as a defendant disqualified her from conducting the Show Cause Hearing. Home also asked for a jury trial on the show cause issues.[4] The continuance was denied on May 16, 2011 (DE 349) as untimely, and because a party cannot disqualify a judge by suing her, United States v. Studley, 783 F.2d 934, 940-41 (9th Cir. 1986). The request for a jury was denied because the

---

[3] Home v. Hollowell, Adversary No. 4:11-ap-00864.

[4] On May 5, 2011 (DE 309), Home also filed an untimely "Request for Jury Trial as Per Bk Rule 426 if the Court Continues to Hear Frivolous Complaints by Debtors." Because it is duplicative of the request in the Notice and because there is no Federal Rule of Bankruptcy Procedure 426, the Court will not consider it.

4

matters being considered at the Show Cause Hearing are exclusively matters for a court to decide. Berardinelli v. Castle & Cooke Inc., 587 F.2d 37, 38-39 (9th Cir. 1978).

On May 18, 2011, the Court held the Show Cause Hearing. At the Show Cause Hearing, the Petitioning Creditors did not produce any evidence that the Alleged Debtor is intended to be something other than a governmental unit. They did not produce evidence of the relationship of the Alleged Debtor to the so-called agents on the Attachment. They also did not produce any evidence that the Petitioning Creditors hold claims against the entities named in the Involuntary Petition or the Attachment. Instead, Mary Home questioned the jurisdiction of the Court and demanded to know in which court the Petitioning Creditors should assert their claims as "secured creditors" under the Uniform Commercial Code. Consistent with a motion filed on May 16, 2011 (DE 353), Federal National Mortgage Association ("FNMA") and law firm Tiffany and Bosco, parties named in the Attachment, requested attorneys' fees, and damages, including punitive damages, be imposed against the Petitioning Creditors. At the end of the Show Cause Hearing, the Court announced that a written order would be issued dismissing the Involuntary Petition.

## II. ISSUES

(1) Should the Involuntary Petition be dismissed because a governmental unit may not be an involuntary debtor?

(2) Should the Involuntary Petition be dismissed because it was filed in bad faith?

(3) What is the effect of dismissal on pleadings filed in the case and on related proceedings?

5

### III. DISCUSSION

A. <u>The Entities Named on the Involuntary Petition and Attachment Are Not Proper Involuntary Debtors</u>.

    (1) <u>Governmental Units May Not Be Involuntary Debtors Under § 303.</u>

Under the Bankruptcy Code, an involuntary petition may only be commenced against a "person." 11 U.S.C. § 303(a). Section 101(41) defines a person to include an "individual, partnership, and [a] corporation," but explicitly excludes governmental units, except in certain circumstances not present here. 11 U.S.C. § 101(41). The Petitioning Creditors have not satisfactorily explained the identity of U.S. Corp or its relationship to the entities on the Attachment, but it is clear from the many pleadings on the docket that the Petitioning Creditors are asserting that the United States government is an involuntary debtor. The Involuntary Petition lists U.S. Corp's address as a building occupied by governmental offices in downtown Tucson, Arizona. U.S. Corp's principal place of business is listed as being in Washington D.C. Eric Holder, the United States Attorney General, is listed as a point of contact. The Petitioning Creditors, including Mary Home, did not offer any evidence at the Show Cause Hearing that U.S. Corp. is not a governmental entity. Because the Involuntary Petition has been filed against an entity not eligible to be an involuntary debtor, the Involuntary Petition must be dismissed as to all of the named governmental units.

### (2) Agents and Instrumentalities Listed on the Attachment Are Not Affiliates of an Involuntary Debtor

The Petitioning Creditors list the parties on the Attachment, as amended, as the alleged "agents and/or instrumentalities" of U.S. Corp. The Bankruptcy Code defines neither "agent" nor "instrumentality." The term "affiliate" is defined by 11 U.S.C. § 101(2), but there is no evidence that any of the entities or individuals named on the Attachment are affiliates of U.S. Corp. Accordingly, none of the parties listed on the Attachment are involuntary debtors, and the Involuntary Petition must be dismissed against them.

### B. Even if the Involuntary Petition Was Filed Against a Proper Debtor, It Should Be Dismissed as Having Been Filed in Bad Faith

Section 303(i) of Title 11 does not define the term "bad faith," but in the Ninth Circuit, courts apply an objective standard in analyzing whether an involuntary petition has been filed in bad faith. In re Wavelength, Inc., 61 B.R. 614, 619-20 (9th Cir. BAP 1986). That standard asks "what a reasonable person would believe" at the time they filed the petition. Id. quoting In re Grecian Heights Owners' Ass'n, 27 B.R. 172, 173 (Bankr. D. Or. 1982). The record demonstrates that the Petitioning Creditors filed this case as a pretext to stop various collection actions including foreclosures, forcible entry and detainer actions, and tax garnishments. A review of the docket and claims register demonstrates that the Involuntary Petition was filed in an effort to manipulate the bankruptcy process and to harass and delay Petitioning Creditors' creditors. The Court finds, therefore, that the case was filed in bad faith under 11 U.S.C. § 303(i).

C. <u>Effect of Dismissal</u>

    (1)   <u>Proof of Claims</u>

The claims allowance process is used to determine the bankruptcy estate's liability on allowed claims. Because the Court has dismissed this case, there is no estate and therefore nothing to distribute to claimants. Accordingly, all of the proof of claims filed in this case have no legal effect. The dismissal of the case also means that no further claims may be filed. Furthermore, the Court has reviewed a number of the 173 claims filed in this case and finds that they are without merit. Like the Involuntary Petition, the proofs of claim were filed in bad faith and, for that additional reason, have no legal effect.

    (2)   <u>Removed Cases</u>

Bankruptcy courts have jurisdiction to hear all claims arising under or related to a bankruptcy case. <u>See</u> 28 U.S.C. §§ 157, 1334. Federal Rule of Bankruptcy Procedure 9027 governs the procedure for removing a state court case to a bankruptcy court.

Home, on his own behalf and the other Petitioning Creditors, has removed a number of cases from various state courts around the country. Those cases are attached to this order (Exhibit "A") and include cases in which no separate adversary was opened (collectively, the "Removed Cases"). None of the procedural requirements of Fed. R. Bankr. P. 9027 were satisfied in any of the Removed Cases.

The dismissal of the Involuntary Petition means that none of the Removed Cases arises in or is related to an existing bankruptcy case and therefore the Removed Cases will all be remanded to the courts from which they were removed. Because some cases were improperly removed from other bankruptcy courts or purported to remove pending

8

trustee's sales, those matters will be dismissed.[5] Separate orders to that effect will be issued on each of the Removed Cases.

(3) <u>Associated Cases</u>

On May 12, 2011, Home filed an adversary complaint naming numerous defendants including this Judge. It asserts unsupportable claims and was filed for the improper purpose of disqualifying the Court from conducting the Show Cause Hearing. It will be dismissed with prejudice by separate order which will also quash all summons issued in conjunction with its filing.

D. <u>Damages</u>

The Dismissal Show Cause Order did not put the Petitioning Creditors on notice that damages might be entered against them under 11 U.S.C. § 303(i). FNMA 's Motion for Sanctions was not filed until May 16, 2011. Because the Petitioning Creditors were not given adequate time to respond to FNMA's request for damages and sanctions, no damages or sanctions will be awarded.

Dated and Signed Above.

Notice to be sent through the
Bankruptcy Noticing Center "BNC"
to the following

Marshall E. Home
3051 W. Mexico Street
Tucson, AZ 85746

All Petitioning Creditors

---

[5] The Court dismissed Adversary No. 4:11-ap-00664 on May 16, 2011 because of its procedural defects under Fed. R. Bankr. P. 9027.

9

| | |
|---|---|
| 1 | |
| 2 | Office of the U.S. Trustee |
|   | 230 North First Ave., Suite 204 |
| 3 | Phoenix, AZ 85003 |

10

**Exhibit A**

The following removed cases will be remanded to the court from which they were removed or dismissed:

(a) Federal National Mortgage Association v. Carr, adversary number 4:11-ap-00702-EWH, removed from the Superior Court for Maricopa County, case number CV2011-000941;

(b) Federal National Mortgage Association v. Frank, adversary number 4:11-ap-00703-EWH, removed from the Superior Court for Yavapai County, case number V13002011-80038;

(c) Federal National Mortgage Association v. Home, adversary number 4:11-ap-00704-EWH, removed from the Superior Court for Pima County, case number 2010 3852;

(d) Bay View Loan Service, LLC v. Jones, adversary number 4:11-ap-00705-EWH, removed from the Superior Court for Los Angeles County with an unknown case number.

(e) Federal National Mortgage Association v. Home, adversary number 4:11-ap-00706-EWH, removed from the Superior Court for Pima County, case number 2010 3852.

(f) Pima County Sheriff Department v. Castle, adversary number 4:11-ap-00710, removed from the Consolidated Justice Court for Pima County, case number 1102638;

(g) Erbin v. Talbot, adversary number 4:11-ap-00711-EWH, a purported removal of a pending trustee's sale in Kane County, presumably in the State of Illinois;

(h) Federal National Mortgage Association v. Brook, adversary number 4:11-ap-00759-EWH, removed from a Utah County court in the State of Utah, case number 110100260.

(i) Federal Home Loan Corp. v. Brook, filed on the administrative docket at docket entry 169 and removed from a Utah County court in the State of Utah, case number 110100260.

11

(j) Smisko v. Recontrust Company, N.A., filed on the administrative docket at docket entry 170 and removed from Pima County Superior Court, case number 20112791.

(k) MERS v. Morgan, filed on the administrative docket at docket entry 229 and purported to be removed from the State of Utah with an unknown case number.

(l) Wells Fargo Bank, N.A. v. Pekrul, filed on the administrative docket at docket entry 313 and purported to be removed from an adversary case in the Bankruptcy Court for the District of Arizona, case number 2:10-bk-32320-SSC.

(m) United States v. Breke, filed on the administrative docket at docket entry 333 and removed from the United States District Court for the Western District of Washington, case number 2010 0328RSL.

(n) State of Arizona v. Albritton, filed on the administrative docket at docket entry 334 and removed from Cochise County Superior Court, case number 2011 00236.

(o) Chas Roberts Air Conditioning, Inc. v. Pekrul, filed on the administrative docket at docket entry 335 and removed from the Maricopa County Superior Court, case number CV2009-055160.

(p) Liebowitz v. Pekrul, filed on the administrative docket at docket entry 336 and removed from the Maricopa County Superior Court, case number CV2009-050536.

(q) Federal National Mortgage Association v. Kelder, filed on the administrative docket at docket entry 351 and removed from the Maricopa County Superior Court, case number CV2011-00559.